UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
ANTHONY BRIAN MALLGREN,

                            Plaintiff,                     **MEMORANDUM & ORDER**
                                                            13-CV-724 (MKB)

                            v.

NEW YORK CITY, et al.,

                            Defendants.
-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Anthony Brian Mallgren, appearing *pro se*, originally brought this action on February 4, 2013. By Order dated March 4, 2013, the Court granted his application to proceed *in forma pauperis*, dismissed his claims against the City of New York and directed him to file an amended complaint within 30 days. Plaintiff did not immediately file an amended complaint. Instead, Plaintiff filed a Notice of Interlocutory Appeal on March 7, 2013. While the appeal was pending, Plaintiff filed multiple motions and two amended complaints. The amendments fail to cure the deficiencies in the original Complaint. Accordingly, the action is dismissed.

    **I.   Background**

      Plaintiff's lengthy litigation history is recounted in this Court's March 11, 2014 Memorandum and Order in *Mallgren v. American Psychiatric Association, et al.*, No. 13-CV-2211, slip op. (E.D.N.Y. Mar. 11, 2014) (dismissed for failure to state a claim). By Orders dated May 2, 2013 in *Mallgren v. Motion Recruitment Partners Inc., et al.*, No. 13-CV-1054, *Mallgren v. John Doe Corporation*, No. 13-CV-1265, and *Mallgren v. Bloomberg, et al.*, No. 13-CV-1466, Plaintiff was warned that the future filing of vexatious and frivolous litigation may result in

sanctions, including the imposition of an injunction prohibiting him from making future filings seeking *in forma pauperis* status without leave of the Court.

The instant Complaint named the City of New York as a defendant and alleged false arrest and a series of state law claims related to incidents in which Plaintiff's interactions with New York City police officers led to his admission to hospitals for psychiatric treatment. The Complaint also sought to remove a pending state law case "to a Federal Jurisdiction." This Court's March 4, 2013 Order dismissed the state law claims and advised Plaintiff that the Removal Statute did not permit him to remove a case after exercising his original choice of forum. As to Plaintiff's Fourth Amendment claims, the Court held that the City of New York cannot be held liable for Plaintiff's claims under 42 U.S.C. § 1983, and directed him to file an amended complaint naming individual defendants and presenting specific details that would support a claim for false arrest. The Court also dismissed the seven motions filed by Plaintiff prior to March 4, 2013.

Plaintiff filed a Notice of Interlocutory Appeal on March 7, 2013, and continued to file motions in this Court, including renewed motions to remove state law claims and cases to federal court (Docket Entry Nos. 19 and 26), and motions for injunctive relief. Two of these motions requested food stamps and nutritional supplementation, and a plane ticket to Spokane, Washington, provided by Project Reconnect, a program through the New York City Department of Homeless Services.[1] (Docket Entry Nos. 23, 27). Plaintiff also requested additional time to

---

[1] The March 20, 2013 Motion for Emergency Injunctive Relief docketed as Entry No. 27 in this case was also docketed in *Mallgren v. Metropolitan Transportation Authority*, No. 13-CV-986 (pending); *Mallgren v. Motion Recruitment Partners Inc., et al.*, No. 13-CV-1054 (dismissed for lack of subject matter jurisdiction), *appeal dismissed* (2d Cir. July 24, 2013) (Issued as Mandate, Aug. 14, 2013); and *Mallgren v. John Doe Corporation*, No. 13-CV-1265 (dismissed as frivolous and for failure to state a claim), *appeal dismissed* (2d Cir. July 24, 2013) (Issued as Mandate, Aug. 14, 2013). The Court previously considered this motion and denied it

file an amended complaint. (Docket Entry No. 28.) On March 28, 2013, Plaintiff filed a document entitled "Partially Amended Complaint," in which he names "North Shore LIJ," an unidentified officer from "NY/NJ Port Authority," "FDNY Ems Respondent, McDonald," and Delta Airlines as Defendants. (*See* Docket Entry No. 29-1.)

According to Plaintiff's March 28, 2013 Amended Complaint, Plaintiff received a free airline ticket with a March 20, 2013 departure for Spokane, Washington. (Docket Entry No. 29-1 at 1.) Plaintiff alleges that his unattended luggage was removed from JFK airport and that TSA officers and Delta Airlines attendants failed to assist him. (*Id.*) Plaintiff further alleges that an incident with an unidentified TSA officer resulted in his arrest by officers from the Port Authority of New York and New Jersey ("Port Authority"). (*Id.* at 2.) "FDNY EMS respondent McDonald state[d] that Mallgren would not be allowed to fly at 'thirty six thousand feet in the air' without being checked out by a hospital." (*Id.*) Plaintiff was taken to the Zucker Hillside Hospital, a psychiatric facility in Glen Oaks, New York operated by North Shore Long Island Jewish Health System, admitted to the psychiatric unit, and "converted to involuntary status" and was "held against [his] will." (*Id.*) The March 28, 2013 Amended Complaint seeks release from involuntary confinement and other injunctive relief and damages. (*Id.* at 3.)

On April 8, 2013, Plaintiff filed a new motion for injunctive relief about the conditions, forced medication, and his lack of access to postage and computer equipment at Zucker Hillside Hospital. (Docket Entry No. 31.) On April 11, 2013, Plaintiff filed yet another motion for injunctive relief, stating that he had been discharged from the hospital on April 8, 2013, and seeking to enjoin any authority from taking him into custody again. (Docket Entry No. 32.) Plaintiff attached his discharge form as an exhibit to this motion. (*See id.*)

---

for lack of jurisdiction and failure to state a claim. *See Mallgren v. Motion Recruitment Partners Inc., et al.*, No. 13-CV-1054, 2013 WL 1873304, at *5 (E.D.N.Y. May 2, 2013).

3

On May 2, 2013, Plaintiff filed a new Amended Complaint naming New York City, unidentified John Does, North Shore-Long Island Jewish Health System, Inc., Continuum Health Partners, Inc., Raymond W. Kelly, Patrick J. Foye, Abdo Nahmod, and John F. Williams as Defendants. (*See* Docket Entry No. 35.)   The Amended Complaint alleges that Plaintiff was "detained by authorities on several occasions, involuntarily transported to a hospital and held against the will of Mallgren for varying durations." (Docket Entry No. 35, at 3.)  It mentions four undated incidents in which Plaintiff was allegedly involuntarily taken by officers from the New York City Police Department ("NYPD") or the Port Authority to SUNY Downstate Medical Center, Beth Israel Medical Center, operated by Continuum Health Partners hospital, or Zucker Hillside Hospital, operated by North Shore-Long Island Jewish Health System, Inc. (*Id.* at 3–4.)  In one incident, Plaintiff alleges that he was held at Zucker Hillside Hospital for "a duration of around two weeks." (*Id.* at 4.)  In another incident, he was "held involuntarily for approximately 5 days." (*Id.*)

In the May 2, 2013 Amended Complaint, Plaintiff alleges that each of these hospital admissions was made in violation of New York Mental Hygiene Laws and the United States Constitution. (*Id.* at 4–6.)  Plaintiff also alleges health care fraud. (*Id.* at 6.)  Plaintiff further alleges that he has suffered from defamation of character, emotional distress, and loss of wages, and seeks damages for medical expenses and other relief. (*Id.* at 7.)  He seeks injunctive relief restraining Defendants from detaining him "without the written order of a Federal Judge." (*Id.*)

The Court of Appeals dismissed the appeal on July 24, 2013, because no final order had been issued by this Court. (Docket Entry No. 37, Mandate issued Aug. 14, 2013.)

## II. Discussion

### a. Effect of Interlocutory Appeal

The Court did not have jurisdiction to consider the amended complaints while Plaintiff's appeal was pending. *See Negron v. United States*, 394 F. App'x 788, 792 (2d Cir. 2010) ("[I]t is well-established that '[t]he filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)); *Hernandez v. Coughlin,* 18 F.3d 133, 138 (2d Cir. 1994) (district court lacked jurisdiction to rule on a motion to amend a complaint after a notice of appeal was filed); *see also Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002) (stating that "[t]he district court could not rule on any motion affecting an aspect of the case that was before [the Second Circuit], including a motion to amend the motion, while that appeal was pending); *Ramirez v. United States*, No. 05-CV-4179, 2013 WL 247792, at *2 (S.D.N.Y. Jan. 22, 2013) (citing *Ching*, 298 F.3d at 180, for the proposition that "the filing of a Notice of Appeal divests [the district court] of jurisdiction over petitioner's original . . . motion"); *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04-CV-3600, 2005 WL 3099592, at *3 (S.D.N.Y. Nov. 17, 2005) (stating that since plaintiffs filed a notice of appeal, the court was "currently without jurisdiction to permit an amendment" (citing *Hernandez*, 18 F.3d at 139)). Thus, the Court took no action during the pendency of Plaintiff's appeal.

### b. Amended Complaints

The Court has now considered the merits of Plaintiff's two Amended Complaints and finds that they fail to cure the deficiencies in the original Complaint. Taken together, the two

5

Amended Complaints raise three potential sets of issues: 1) false arrest claims stemming from four separate incidents in which Plaintiff was detained by officers from the NYPD or the Port Authority and taken to medical facilities; 2) challenges to his involuntary commitment to mental health facilities; and 3) state law claims related to New York's Mental Hygiene laws and health care fraud.

### i. Fourth Amendment Claims

Plaintiff's false arrest / imprisonment claims must be dismissed for failure to state a claim against any of the named Defendants. Fourth Amendment claims alleging false arrest or false imprisonment may be cognizable under 42 U.S.C. § 1983. To state a claim pursuant to Section 1983, a plaintiff must allege that the challenged conduct was "committed by a person acting under color of state law," and that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted); *see also Franks v. Laquila Grp. Inc.*, No. 13-CV-980, 2013 WL 790544, at 2 (E.D.N.Y. Mar. 4, 2013) (quoting *American Mfrs. Mut. Ins. Co.*, 526 U.S. at 50); *Elufe v. Lyons*, No. 10-CV-2638, 2010 WL 2606649, at *1 (E.D.N.Y. June 18, 2010) (same). Claims generally must be brought against the individuals personally responsible for the alleged deprivation of constitutional rights, not against the government entities or agencies where those individuals are employed. A Section 1983 plaintiff seeking to recover money damages must establish that the named defendant was personally involved in the wrongdoing or misconduct complained of. *Farrell v. Burke*, 449 F.3d

470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A municipality can be liable under § 1983 only if a plaintiff can first show an underlying constitutional violation, *Mendoza v. County of Nassau,* No. 11-CV-2487, 2012 WL 4490539, at *7 (E.D.N.Y. Sept. 27, 2012), and then show that a municipal policy or custom caused the violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011), *cert. denied*, 568 U.S. ---, 132 S. Ct. 1741 (2012). "'[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability,' [however] they can be the basis of liability if 'they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage' of which supervisors must have been aware." *Matusick v. Erie Cnty. Water Auth.*, --- F.3d ---, ---, 2014 WL 700718, at *24 (2d Cir. Feb. 25, 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012)); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). "[L]ocal governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. ---, 131 S. Ct. 1350, 1359 (2011) (internal citations and quotation marks omitted); *see also Matusick*, --- F.3d at ---, 2014 WL 700718, at *24 ("a municipality cannot be held liable for the conduct of employees under a *respondeat superior* theory").

In this case, none of the named Defendants is amenable to suit under Section 1983. The City of New York is not subject to municipal liability under the circumstances described by

7

Plaintiff. Although Plaintiff claims that the four incidents in which he was detained and transported to a hospital "establish a posteriori basis of municipality accountability" (Docket Entry No. 35, at 5), his allegations do not raise an inference that any one of these incidents were unconstitutional or that they collectively raise an inference of the existence of an unconstitutional municipal policy.

One of the Amended Complaints also names as Defendants the former Police Commissioner, Raymond W. Kelly, the Executive Director of the Port Authority, Patrick J. Foye, the Chief of the Fire Department of New York Emergency Medical Services, Abdo Nahmod, and the unnamed president of the SUNY-Downstate Medical Center. However, Plaintiff has not alleged that these supervisory officials personally participated in the alleged harm or could otherwise be held liable for the deprivation of any constitutional rights. Therefore, the claims against these officials are dismissed.

The North Shore Long Island Jewish Health System, Inc., Continuum Health Partners, and Delta Airlines are also named as Defendants, but these private entities are not ordinarily amenable to suits for damages pursuant to 42 U.S.C. § 1983. Plaintiff has not alleged that the hospitals or the airline or any of their staff members are state actors, were acting in concert with state actors, or were serving as an instrumentality of the state. *See, e.g.*, *Kia P. v. McIntyre*, 235 F.3d 749, 755–57 (2d Cir. 2000) (private hospital was not a state or municipal facility and thus was not liable pursuant to § 1983, unless it was acting as an instrumentality of the state). Therefore, the claims against these Defendants are dismissed.

Without naming any individual defendants who were actually involved in the incidents or specifying any details, Plaintiff's vague allegations of being "detained by authorities on several occasions" fails to state a claim for false arrest / false imprisonment. Plaintiff's Fourth

8

Amendment claims are therefore dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B).

### ii. Other Claims

Plaintiff's claims concerning his involuntary confinement or the conditions of said confinement are dismissed as moot, as Plaintiff has already been released from his brief periods of hospitalization. Plaintiff's claims alleging violations of New York State Law or Health Care Fraud fail to state any basis for this Court's jurisdiction.

The March 28, 2013 Amended Complaint also names an unidentified Port Authority officer and "FDNY Ems Respondent, McDonald." Plaintiff does not include any allegations against any individual Port Authority officer. His only factual allegation against McDonald is that McDonald informed him that he would be taken to a hospital and would not be allowed onto the airplane. These allegations fail to state a claim for deprivation of civil rights.

## III. Conclusion

For the foregoing reasons, the Amended Complaints filed March 28, 2013 and May 2, 2013 are dismissed for failure to state claims on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B). Any state law claims are dismissed without prejudice. The Court renews its warning to Plaintiff that the future filing of vexatious and frivolous litigation may result in sanctions, including the imposition of an injunction prohibiting him from making future filings seeking *in forma pauperis* status without leave of the Court. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in*

*forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

                 SO ORDERED:

                 ____s/ MKB_____
                 MARGO K. BRODIE
                 United States District Judge

Dated: March 12, 2014
    Brooklyn, New York